# AGREEMENT FOR THE PROVISION OF INMATE HEALTH SERVICES
# CALUMET COUNTY, WISCONSIN

This Agreement for the Provision of Inmate Health Services (hereinafter referred to as the "AGREEMENT"), effective as of the date of the last signature hereto, entered into by and between the County of Calumet, located in the State of Wisconsin (hereinafter referred to as the "COUNTY") and Advanced Correctional Healthcare, Inc. (hereinafter referred to as "ACH"), an Illinois corporation.

## RECITALS

**WHEREAS**, the COUNTY and the Calumet County Sheriff (hereinafter the "SHERIFF") desire to provide professional and responsive healthcare services to the inmates of the Calumet County Jail (hereinafter referred to as the "FACILITY"); and

**WHEREAS**, ACH is a corporation which provides professional and responsive healthcare services in incarceration facilities.

**NOW THEREFORE**, the parties enter into this AGREEMENT as hereinafter set forth.

## DEFINITIONS

**CORPORATE HOLIDAYS** - New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, and Christmas Day.

**COUNTY INMATES** – Inmates booked into the custody of the COUNTY or SHERIFF and presently incarcerated in the FACILITY, but not to include NON-COUNTY INMATES.

**ELECTIVE CARE** - Care which, if not provided, would not, in the opinion of ACH's practitioner (a licensed practitioner employed by ACH), cause the inmate's health to deteriorate, or cause harm to the inmate's well-being.

**MID-LEVEL PRACTITIONER** – An advanced registered nurse practitioner or physician assistant who has completed an advanced training program. A MID-LEVEL PRACTITIONER will be duly licensed to practice medicine in the appropriate state.

**MOBILE SERVICES** – Laboratory services that are drawn on-site and sent off-site for testing, and any ancillary medical services in which a provider comes on-site to perform work using the provider's equipment and/or staff, including, but not limited to X-ray services.

**NON-COUNTY INMATES** – Inmates who are covered by a government health program for American Indians; work release inmates while on work release; inmates during transport to/from outside facilities; and inmates housed in the FACILITY for other counties, State Department of Corrections, U.S. Immigration and Customs Enforcement (ICE), U.S. Marshals, and/or other federal agencies.

**OFF-SITE SERVICES** – Medical services including, but not limited to, consultation services, dental care not performed on-site, diagnostic testing, hospital services, medically-indicated emergency ground ambulance transportation, mental health services not performed on-site, laboratory services that are drawn off-site, and specialty services.

**SPECIFIED MEDICATIONS** – Medications related to the treatment of HIV, AIDS, HIV/AIDS related diseases, hepatitis, cystic fibrosis, multiple sclerosis, cancer, and/or active tuberculosis, as well as medications listed as biological and/or anti-rejection drugs. Medications related to these treatments will be defined in accordance with medical literature.

1

## ARTICLE 1:
## DUTIES AND OBLIGATIONS OF ACH

For and in consideration of the compensation to be paid to ACH as hereinafter set forth, ACH agrees as follows:

1.1  ADVANCED TRAINING. The FACILITY is entitled to receive one copy each of the training videos produced and sold by ACH at no additional charge, with the following exception: facilities will not receive training videos which cover topics for which they have already received an ACH training video covering that topic. If a training video is lost or stolen, the FACILITY may be charged a replacement fee to replace the video. ACH training videos are to be viewed by the FACILITY staff only and are not to be reproduced except with the prior written permission of ACH. ACH does not guarantee training credits and is not responsible for obtaining training credits on behalf of the FACILITY staff.

1.2  COLLECTION OF DNA/PHYSICAL EVIDENCE AND FORENSIC INFORMATION. ACH will perform body cavity searches on-site with signed consent from the inmate in accordance with the following guidelines: ACH staff are prohibited from participating in the collection of forensic evidence, except when: (1) complying with state laws that require blood samples from inmates, so long as there is consent of the inmate and ACH staff are not involved in any punitive action taken as a result of an inmate's nonparticipation in the collection process, (2) conducting body cavity searches, and blood or urine testing for alcohol or other drugs when done for medical purposes by a practitioner's order, and/or (3) conducting inmate-specific, court-ordered laboratory tests, examinations, oral swabs, or radiology procedures with consent of the inmate. ACH will not pay for any costs associated with any body cavity search or any other collection of forensic information, including, but not limited to, any associated medical fees, laboratory fees, added personnel costs, and/or court costs.

    1.2.1  SEXUAL ASSAULT. In the case of sexual assault, the inmate victim will be sent to the hospital for appropriate collection of evidence which includes chain of custody, counseling, and care. Court-ordered body cavity searches will be referred to the appropriate facility or emergency room.

1.3  CQI MEETINGS. ACH will review, at the scheduled Continuous Quality Improvement (CQI) meetings with the SHERIFF or designee, the healthcare reports concerning the overall operation of the healthcare services program and the general health of the inmates of the FACILITY.

1.4  DENTAL CARE. ACH will provide dental triage screenings for inmates for the purpose of identifying serious dental needs. The COUNTY will pay for any costs associated with dental care.

1.5  ECTOPARASITES. For inmates presenting with ectoparasitic infection (as determined by the ACH practitioner), ACH will provide and pay for medically indicated treatment. ACH will not be responsible for any preventative treatment costs related to ectoparasites. ACH will not be responsible for facility cleaning for ectoparasites.

1.6  ELECTIVE CARE. ACH will not provide ELECTIVE CARE to inmates. Decisions concerning ELECTIVE CARE will be consistent with the applicable American Medical Association (AMA) standards.

1.7  FACILITY STAFF TRAINING. Upon request of the SHERIFF, ACH will provide training for FACILITY staff on topics to be mutually agreed upon.

1.8  HEALTH EDUCATION AND EVALUATIONS. ACH will provide health education materials to the SHERIFF for inmate education. ACH will also provide on-site health evaluations and medical care for inmates. Additionally, ACH will provide basic physical examinations for potential inmate workers to ensure the inmates are physically capable of performing assigned work duties.

1.9  INMATE LABOR. Inmates will not be employed or otherwise engaged or utilized by ACH in the direct rendition of any healthcare services.

1.10  MEDICAL CLAIMS RE-PRICING. ACH will not be responsible for the re-pricing of medical claims.

1.11 MEDICAL RECORDS. Inmate medical records will always be the property of the SHERIFF and will remain with the SHERIFF. ACH will maintain or require being maintained medical records for each inmate who has received healthcare services. The medical records will be kept separate from the inmate's confinement record. A complete copy of the original applicable medical record will be available to accompany each inmate who is transferred from the FACILITY to another location for off-site services or transferred to another institution. Medical records will be kept confidential, subject to applicable laws and exemptions regarding confidentiality of inmate medical records. ACH will comply with the SHERIFF's policy with regard to access by inmates to their medical records. The SHERIFF will provide ACH with reasonable ongoing access to all medical records, even after the expiration of this AGREEMENT, for the purpose of defending litigation.

1.12 MEDICAL SUPPLIES (DISPOSABLE). ACH will pay for and provide disposable medical supplies intended for one-time use, not to include durable or reusable medical supplies. Typical disposable medical supplies expected in a medical unit would be tongue blades, Band-Aids, gauze pads, medical tape, sterile water, saline, pregnancy tests, blood sugar strips, peak flow mouth pieces, O2 tubing, urine test strips, syringes, gloves **for the medical staff**, med cups, lancets, ammonia ampules, cotton-tip applicators, and alcohol preps.

1.13 MENTAL HEALTH SERVICES – CRISIS INTERVENTION. ACH will refer inmates to crisis intervention services when indicated. The crisis intervention services will be provided by the FACILITY staff in concert with ACH staff. ACH will coordinate with the medical and programming services (e.g., chemical dependence) at the FACILITY so that patient management is appropriately integrated, health needs are met, and the impact of any of these conditions on each other is adequately addressed. ACH will use an integrated and multidisciplinary team (including FACILITY staff) to develop treatment plans for inmates displaying problematic behavior.

1.14 MOBILE SERVICES. When MOBILE SERVICES are required for medical reasons and are available to come to the FACILITY, ACH will arrange for those services for inmates in accordance with the SHERIFF's policies and procedures. ACH will pay for the costs associated with MOBILE SERVICES.

1.15 OFF-SITE SERVICES. When OFF-SITE SERVICES are required for medical reasons, ACH will arrange for those services for inmates and in accordance with the SHERIFF's policies and procedures. The COUNTY will pay for any costs associated with OFF-SITE SERVICES.

1.16 OTHER SERVICES AND EXPENSES. ACH will not provide and will not pay for any services, supplies and/or equipment which are not specifically contained in this AGREEMENT.

1.17 PHARMACEUTICALS.

    1.17.1 COURT-ORDERED MEDICATIONS AND TESTING. ACH will provide all court-ordered medications and testing to inmates.

        1.17.1.1 COUNTY INMATES. ACH will only pay for court-ordered medications that (1) the ACH practitioner considers appropriate and (2) are not included on the SPECIFIED MEDICATIONS list. All other court-ordered medications and testing for COUNTY INMATES will be paid for by the COUNTY.

        1.17.1.2 NON-COUNTY INMATES (not to include inmates housed for ICE). ACH will only pay for court-ordered medications that (1) the ACH practitioner considers appropriate and (2) are prescribed over-the-counter medications. All other court-ordered medication and testing for NON-COUNTY INMATES will be billed to the COUNTY so the COUNTY may seek reimbursement from the responsible authority of the NON-COUNTY INMATE.

    1.17.2 HOME MEDICATIONS. The COUNTY agrees to allow home medications in the FACILITY when they are able to be properly verified.

    1.17.3 COUNTY INMATES. ACH will provide all medically-indicated pharmaceuticals for COUNTY INMATES. ACH will pay for prescription medications; prescribed over-the-counter medications; and psychotropic medications which are prescribed by ACH practitioners; with the following exception: the

COUNTY will pay for all SPECIFIED MEDICATIONS. The COUNTY will also pay for all psychotropic medications which are prescribed by non-ACH practitioners.

1.17.4 INMATES HOUSED FOR ICE. ACH will provide all medically-indicated pharmaceuticals for inmates housed for ICE. ACH will not pay for any pharmaceuticals for ICE inmates. Prescription medications will be billed directly to ICE by the applicable pharmacy. The COUNTY will pay for any prescription medications for which ICE refuses to pay, as well as any prescribed over-the-counter medications.

1.17.5 NON-COUNTY INMATES (not to include inmates housed for ICE). ACH will provide all medically-indicated pharmaceuticals for NON-COUNTY INMATES. ACH will only pay for prescribed over-the-counter medications. All other prescription medications will be billed to the COUNTY so the COUNTY may seek reimbursement from the responsible authority of the NON-COUNTY INMATE.

1.18 PRISON RAPE ELIMINATION ACT OF 2003 (PREA). Should the SHERIFF choose to comply with PREA, ACH will endeavor to comply with PREA, applicable PREA standards, and the FACILITY's policies related to PREA for preventing, detecting, monitoring, investigating, and eradicating any form of sexual abuse within the FACILITY. ACH acknowledges that, in addition to self-monitoring, the FACILITY may conduct announced or unannounced monitoring to include on-site monitoring.

1.19 SHERIFF'S POLICIES, PROCEDURES, AND PROTOCOLS. ACH staff will operate within the requirements of the SHERIFF's policies, procedures, and protocols as communicated to ACH staff by the SHERIFF or designee. Such policies, procedures, and protocols may change from time to time; if so, the SHERIFF or designee will promptly notify ACH staff, provide them with a written copy of the modified policy, procedure, or protocol, and provide any necessary training to the ACH staff. All policies, procedures, and protocols regarding operations within the FACILITY will at all times remain the property of the SHERIFF and will remain at the FACILITY after termination of this AGREEMENT.

1.20 STAFFING. ACH will provide staffing coverage as requested by the SHERIFF and detailed in this staffing section.

1.20.1 MEAL BREAKS. It is understood and agreed that ACH employees are allowed to leave the premises during the work day for meal breaks.

1.20.2 NURSING. ACH will provide on-site licensed practical or registered nursing coverage for sixteen (16) hours per week on a schedule approved by the SHERIFF. The licensure of the nurse will be determined by the Sheriff; registered nursing coverage may result in an increased cost. When approved by the SHERIFF or designee, hours worked in excess of the contracted amount will be billed monthly to the COUNTY at the prevailing wage and benefit rate of the ACH employee. For hours of absence due to CORPORATE HOLIDAYS, paid time off, or sick time, the hours will not be replaced or credited. For all other absences, ACH endeavors to provide replacement coverage, and if it is unable to do so, ACH's Director of Medical Operations for the FACILITY and the SHERIFF or designee will negotiate a mutually agreeable remedy.

1.20.3 PRACTITIONER. A physician and/or MID-LEVEL PRACTITIONER will visit the FACILITY every other week or as otherwise agreed by the SHERIFF and ACH, and will stay until all work is completed. A MID-LEVEL PRACTITIONER will only be used with the approval of the SHERIFF. The physician and/or MID-LEVEL PRACTITIONER will be available by telephone to the FACILITY and medical staff on an on-call basis, seven (7) days per week, twenty-four (24) hours per day. For scheduled visits that fall on CORPORATE HOLIDAYS, coverage will be provided by telephone only.

1.20.4 SATISIFCATION WITH HEALTH CARE STAFF. In recognition of the sensitive nature of correctional facility operations, if the SHERIFF becomes dissatisfied with any member of the HEALTH CARE STAFF, the SHERIFF shall provide ACH written notice of such dissatisfaction and the reasons therefore. Following receipt of such notice, ACH shall use commercially reasonable efforts to resolve the dissatisfaction. If the problem is not resolved to the satisfaction of the SHERIFF within ten (10) business days following ACH's receipt of the notice, ACH shall remove the individual from providing services at

4

the JAIL within a reasonable time frame considering the effects of such removal on ACH's ability to deliver health care services and recruiting/hiring of an acceptable replacement. The SHERIFF reserve the right to revoke the security clearance of any ACH employee at any time.

1.21  TUBERCULOSIS (TB) TESTING.

  1.21.1  FACILITY STAFF. ACH will perform TB skin tests as directed by the SHERIFF. The COUNTY will pay for the TB serum and related supplies. Upon the SHERIFF's request, ACH will secure the serum and related supplies through the correctional pharmacy to secure the best possible price, then bill the COUNTY for those costs.

  1.21.2  INMATES. ACH will provide TB skin tests as directed by the SHERIFF. ACH will pay for the TB serum and related supplies.

## ARTICLE 2:
## DUTIES AND OBLIGATIONS OF THE COUNTY

2.1  BIOMEDICAL WASTE DISPOSAL. The COUNTY will be responsible for the provision of and cost of biomedical waste disposal services at the FACILITY consistent with all applicable laws. Typical biomedical waste expected in the medical unit would be bandages, dressings, gloves, hypodermic needles, laboratory containers, sharps, and syringes.

2.2  CO-PAY. The COUNTY agrees to the use of a co-pay system, as permitted by law, for inmate medical requests.

2.3  DUTY TO PROTECT INMATES. The non-delegable duty to protect inmates is, and always will be, vested in the SHERIFF. This AGREEMENT does not result in the assumption of a non-delegable duty by ACH. As such, the SHERIFF specifically retains the duty and obligation for security of the inmates. This duty extends to the control of inmate movement. ACH and its personnel will assume no responsibility for the movement of inmates and assume no responsibility for inmate protection at any time.

2.4  HIRING OF ACH STAFF. While ACH is pleased to provide staffing during this engagement, ACH does not expect the COUNTY to offer permanent employment to ACH employees or independent contractors. ACH has a significant investment in the training and professional development of our employees and independent contractors and they are valued employees and independent contracts of ACH. **If the COUNTY should hire any ACH employee or independent contractor during this AGREEMENT term or within one (1) year after this AGREEMENT's termination, the COUNTY will be billed a professional replacement fee of ▮▮▮▮▮▮▮▮▮▮ to compensate ACH for each employee or independent contractor, with the following exception: this does not apply to any medical staff member who was employed by the COUNTY prior to this AGREEMENT.**

2.5  INMATE INFORMATION. The SHERIFF will provide, as needed, information pertaining to inmates that ACH and the SHERIFF mutually identify as reasonable and necessary for ACH to adequately perform its obligations to the SHERIFF and the COUNTY. Additionally, during this AGREEMENT period, and for a reasonable time thereafter, the SHERIFF will provide ACH, at ACH's request, the SHERIFF's records relating to the provision of healthcare services to inmates as may be reasonably requested by ACH in connection with an investigation of, or defense of, any claim by a third party related to ACH's conduct. As ACH may reasonably request, and consistent with applicable state and federal laws and the foregoing provision, the SHERIFF will also make available to ACH such records as are maintained by the SHERIFF, hospitals, and other off-site healthcare providers involved in the care or treatment of inmates (to the extent the SHERIFF has any control over those records). Any such information provided by the SHERIFF to ACH that the SHERIFF considers confidential will be kept confidential by ACH and will not, except as may be required by law, be distributed to any third party without the prior written approval of the SHERIFF. Notwithstanding any provision of this AGREEMENT to the contrary, the SHERIFF's internal affairs investigative records will not be required to be provided to ACH or any other person or entity (except as may be required by law).

2.6   MEDICAL EQUIPMENT (DURABLE). Medical equipment remains the responsibility of the SHERIFF. At the SHERIFF's request, ACH may assist the SHERIFF in securing the equipment at cost-effective pricing. Typical durable medical equipment expected in a medical unit would be: exam table, exam stool, ophthalmic / otoscope, peak flow meter, digital thermometer, stethoscope, X-large and large blood pressure cuffs, emesis basin, CPR AmbuBag (adult & 2-way mask), refrigerator (small), and scales. Upon termination of this AGREEMENT, the medical equipment will be in good working order, with allowances made for reasonable wear and tear.

2.7   NON-MEDICAL CARE OF INMATES. The COUNTY will provide and pay for all other personal (non-medical) needs of the inmates while in the FACILITY, including, but not limited to: daily housekeeping services; dietary services, including special supplements, liquid diets, or other dietary needs; building maintenance services; personal hygiene supplies and services; clothing; and linen supplies.

2.8   OFFICE EQUIPMENT (DURABLE). The SHERIFF will provide use of COUNTY-owned office equipment and all necessary utilities in place at the FACILITY's healthcare unit. Typical office equipment expected in a medical unit would be a locking file (recommended four-drawer); paper punch; staple remover; stapler; cabinet for storing medical supplies such as Band-Aids, gauze, etc.; computer; fax machine; copier / printer; and toner. Upon termination of this AGREEMENT, the office equipment will be in good working order, with allowances made for reasonable wear and tear.

2.9   OFFICE SUPPLIES (DISPOSABLE). The COUNTY will provide disposable office supplies, such as medical charts, paper, pens, staples, and Post-It notes which are required for the provision of inmate healthcare services.

2.10  SECURITY. The SHERIFF will maintain responsibility for the physical security of the FACILITY and the continuing security of the inmates. ACH and the SHERIFF understand that adequate security services are necessary for the safety of the agents, employees, and subcontractors of ACH, as well as for the security of inmates and FACILITY staff, consistent with the correctional setting. The SHERIFF will provide security sufficient to enable ACH and its personnel to safely provide the healthcare services described in this AGREEMENT. The SHERIFF will screen ACH's proposed staff to ensure that they will not constitute a security risk. The SHERIFF will have final approval of ACH's employees in regards to security/background clearance.

## ARTICLE 3:
## COMPENSATION/ADJUSTMENTS

3.1   ANNUAL AMOUNT/MONTHLY PAYMENTS. The annualized amount to be paid by the COUNTY to ACH under this AGREEMENT is to be ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. The COUNTY will make monthly payments of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮, which is equal to 1/12 of the annualized amount, during the term of this AGREEMENT. ACH will bill the COUNTY approximately thirty (30) days prior to the month in which services are to be rendered. The COUNTY agrees to pay ACH prior to the tenth (10th) day of the month in which services are rendered.

   3.1.1  ANNUAL AMOUNT UPON RENEWAL. Upon the annual anniversary date of this AGREEMENT, the annualized amount of increase for compensation will be the 12-Month Consumer Price Index (CPI) for medical care or zero percent (0%), whichever is higher. The CPI will be calculated from the most recent CPI data as published by the Bureau of Labor Statistics.

3.2   QUARTERLY ADJUSTMENTS. Account reconciliation will be completed for variances in the ADP and other expenses, such as equipment or services purchased by ACH (with prior approval of the COUNTY) on behalf of the COUNTY.

   3.2.1  AVERAGE DAILY POPULATION (ADP). ADP for a given quarter will be determined from the FACILITY census records. For billing purposes, the COUNTY INMATE ADP will be 30 and the NON-COUNTY INMATE ADP will be 0. Inmates who are not presently incarcerated in the FACILITY (i.e., persons on electronic monitoring or probation, or who are hospitalized, or in halfway housing or early release housing) should not be counted in either ADP reported to ACH by the COUNTY. The ADPs reported to ACH should only include those inmates presently incarcerated in the FACILITY.

6

3.2.2 PER DIEM.

    3.2.2.1 GENERAL. Per diem rate(s) are intended to cover additional costs in those instances where minor, short-term changes in the inmate population results in the higher utilization of routine supplies and services. The per diem is not intended to provide for any additional fixed costs, such as new fixed staffing positions that might prove necessary if the inmate population grows significantly and is sustained. In such cases, ACH reserves the right to negotiate for an increase to its staffing and its contract price in order to continue to provide services to the increased number of inmates and maintain the standard of care. ACH will request the monthly count for these separate populations on a quarterly basis. The per diem rate(s) may be adjusted annually at ACH's discretion.

    3.2.2.2 COUNTY INMATES. When the ADP exceeds or falls below the contracted rate in any calendar quarter, the compensation variance will be figured on the average number of COUNTY INMATES above or below the contracted ADP for that quarter multiplied by the per diem rate of ▉▉▉ per inmate per day. (Example: If the ADP for a quarter is 10 above the contracted ADP, additional compensation due will be calculated as follows: 10 x ▉▉▉ x 91)

    3.2.2.3 NON-COUNTY INMATES. To cover the cost of incidental medical expenses for NON-COUNTY INMATES (such as disposable medical supplies, biomedical waste disposal services, and medical malpractice and civil rights insurance coverage), a separate per diem rate of ▉▉▉ per inmate per day will be assessed for each NON-COUNTY INMATE housed in the FACILITY in excess of the contracted NON-COUNTY INMATE ADP.

3.2.3 ARREARS. Any contract amount in arrears will be settled through reconciliation and adjusted accordingly. Adjustments will be made to the first monthly invoice prepared after reconciliation between ACH and the COUNTY. Payment of the adjusted amount will be due upon receipt of said invoice.

## ARTICLE 4:
## TERM AND TERMINATION

4.1 TERM. The term of this AGREEMENT will begin on __04/27/2016__ at 12:01 A.M. and will continue in full force and effect until __12/31/2016__ at 11:59 P.M., unless earlier terminated, extended, or renewed pursuant to this AGREEMENT. This AGREEMENT will automatically renew for successive one (1) year periods unless either party gives ninety (90) days' written notice prior to the end of a term.

4.2 TERMINATION.

    4.2.1 TERMINATION FOR LACK OF APPROPRIATIONS. It is understood and agreed that this AGREEMENT will be subject to annual appropriations by the COUNTY. If funds are not appropriated for this AGREEMENT, then upon exhaustion of such funding, the COUNTY and the SHERIFF will be entitled to immediately terminate this AGREEMENT without penalty or liability. Recognizing that such termination may entail substantial costs for ACH, the COUNTY and the SHERIFF will act in good faith and make every effort to give ACH reasonable advance notice of any potential problem with funding or appropriations. The COUNTY agrees to pay for services rendered up to the point of termination.

    4.2.2 TERMNIATION DUE TO ACH'S OPERATIONS. The COUNTY reserves the right to terminate this AGREEMENT immediately upon written notification to ACH in the event that ACH discontinues or abandons operations, is adjudges bankrupt or is reorganized under any bankruptcy law, or fails to keep in force any required insurance policies. Both parties agree that termination under this provision will be considered without cause.

    4.2.3 90-DAY OUT CLAUSE. Notwithstanding anything to the contrary contained in this AGREEMENT, the COUNTY, the SHERIFF, or ACH may, without prejudice to any other rights they may have, terminate this AGREEMENT by giving ninety (90) days' advance written notice to the other party. If ninety (90) days' advance written notice is provided, termination will be without penalty to any of the parties. If the

7

COUNTY gives ACH less than ninety (90) days' advance written notice, the COUNTY or ACH agrees to pay to the other a penalty equal to one (1) month's contract price as an early termination fee.

4.2.4 TERMINATION FOR CAUSE. The AGREEMENT may be terminated for cause under the following provisions:

4.2.4.1 TERMINATION BY ACH. Failure of the COUNTY and/or SHRIFF to comply with any provision of this AGREEMENT shall be considered grounds for termination of this AGREEMENT by ACH, upon ninety (90) days advance written notice to the COUNTY specifying the termination effective date and identifying the "basis for termination." The COUNTY shall pay for services rendered up to the date of termination of the AGREEMENT. Upon receipt of the written notice, the COUNTY shall have ten (10) days to provide a written response to ACH. If the COUNTY provides a written response to ACH which provides an adequate explanation for the "basis for termination" and the COUNTY cures the explanation "basis for termination" to the satisfaction of the ACH, the ninety (90) day notice shall become null and void and this AGREEMENT will remain in full force and effect. Termination under this provision shall be without penalty to ACH.

4.2.4.2 TERMINATION BY COUNTY. Failure of ACH to comply with any provisions of this AGREEMENT shall be considered grounds for termination of this AGREEMENT by the COUNTY who shall provide ninety (90) days advanced written notice specifying the termination effective date and identifying the "basis for termination." The COUNTY shall pay for services rendered up to the date of termination of the AGREEMENT. Upon receipt of the written notice, ACH shall have ten (10) days to provide a written response to the COUNTY. If ACH provides a written response to the COUNTY which provides an adequate explanation for the "basis of termination," or cures the "basis for termination" to the satisfaction of the SHERIFF or COUNTY, the ninety (90) day notice shall become null and void and this contract will remain in full force and effect. Termination under this provision shall be without penalty to the SHERIFF or the COUNTY

## ARTICLE 5:
## GENERAL TERMS AND CONDITIONS

5.1 ADVICE OF COUNSEL. Each of the parties (a) has had the opportunity to seek counsel, legal or otherwise, prior to entering into this AGREEMENT, (b) is freely entering into this AGREEMENT of his/her or its own volition, and (c) understands and agrees that this AGREEMENT will be construed as if drafted by both parties and not by one party solely.

5.2 ARBITRATION; GOVERNING LAW. The parties hereby agree that any dispute arising under this AGREEMENT, or in connection with any breach thereof, will be finally resolved through binding arbitration conducted in Chilton, Wisconsin, in accordance with the Commercial Arbitration Rules of the American Arbitration Association by a single, neutral arbitrator appointed in accordance with such Rules. No punitive damages may be granted by the arbitrator. The parties agree that the arbitrator's decision will be the sole, exclusive and binding remedy between them regarding any and all such disputes. This AGREEMENT, and any arbitration conducted thereby, will be governed by the laws of the State of Wisconsin (without reference to conflicts of laws principles).

5.3 ASSIGNMENT. ACH may not assign this AGREEMENT or any rights hereunder in whole or in part. Subject to the foregoing, this AGREEMENT will inure to the benefit of and be binding upon each of the heirs, permitted assigns, and successors of the respective parties. Any assignment in violation of this section will be null and void.

5.4 ATTORNEY FEES AND COSTS. In the event a lawsuit, arbitration, or mediation is initiated by either party, the party against whom a judgment or award is entered will also be liable for costs of suit and reasonable attorneys' fees as set by the court or arbitrator.

5.5 AUTHORITY. The persons signing below represent that they have the right and authority to execute this AGREEMENT for their respective entities and no further approvals are necessary to create a binding AGREEMENT.

5.6 COMPLIANCE WITH FEDERAL, STATE AND LOCAL LAWS. The SHERIFF, the COUNTY, and ACH agree that no party will require performance of any ACH or COUNTY employee, agent or independent contractor that would violate federal, state and/or local laws, ordinances, rules and/or regulations.

5.7 COUNTERPARTS; HEADINGS. This AGREEMENT may be executed in counterparts, each of which will be an original and all of which will constitute one AGREEMENT. The headings contained in this AGREEMENT are for reference purposes only and will not affect in any way the meaning or interpretation of this AGREEMENT. The terms "inmate" and "detainee" may be used interchangeably throughout this AGREEMENT and will not affect in any way the meaning or interpretation of this AGREEMENT.

5.8 DEPARTMENT OF JUSTICE REQUIREMENTS. The COUNTY will be responsible for any additional services required at the FACILITY as the result of governmental (including, but not limited to, the Department of Justice, Immigration and Customs Enforcement, Department of Corrections, Federal Bureau of Prisons, or United States Marshals Service) investigation, mandate, memorandum, or order.

5.9 ENTIRE AGREEMENT; AMENDMENT. This AGREEMENT represents the entire understanding of the parties with respect to the subject matter hereof, supersedes and cancels all prior agreements, understandings, arrangements, or representations between the parties with respect to such subject matter, and may only be amended by written agreement of both parties. The parties agree that their performances hereunder do not obligate either party to enter into any further agreement or business arrangement.

5.10 EQUAL EMPLOYMENT OPPORTUNITY. It is the policy of ACH to provide equal employment opportunities to all employees and applicants for employment without regard to race, color, religion, sex, national origin, disability, age, or genetics. In addition, it is the policy of ACH to comply with applicable state and local laws governing nondiscrimination in employment in every location in which ACH has facilities and employees. This policy applies to all terms and conditions of employment including, but not limited to, recruitment, hiring, placement, promotion, termination, layoff, recall, transfer, leaves of absence, benefit plans, all forms of compensation, and training.

5.11 EXCUSED PERFORMANCE. In case performance of any terms of parts hereof will be delayed or prevented because of compliance with any law, decree, or order of any governmental agency or authority of local, state, or federal governments or because of riots, public disturbances, strikes, lockouts, differences with workers, fires, floods, Acts of God, or any other reason whatsoever which is not within the control of the parties whose performance is interfered with and which, by the exercise of reasonable diligence, said party is unable to prevent, the party so suffering may at its option, suspend, without liability, the performance of its obligations hereunder during the period such cause continues.

5.12 FURTHER ACTS. The parties agree to perform any further acts and execute and deliver any further documents that may be reasonably necessary to carry out the provisions of this AGREEMENT.

5.13 GROUP PURCHASING. The COUNTY authorizes ACH to sign up the FACILITY as a ship-to site under ACH's group purchasing plan.

5.14 HOLD HARMLESS AND INDEMNIFY.

    5.14.1 ACH will hold harmless and indemnify the COUNTY and SHERIFF (together with their respective employees) against any loss or damage, including reasonable attorneys' fees and other costs of litigation, solely caused or necessitated by the negligent, reckless, intentional, or deliberately indifferent conduct of ACH or its employees, which is related to medical treatment or care provided by ACH. With respect to any claim for indemnification, the COUNTY will (i) give written notice thereof to ACH within ninety(90) days of receiving notice of the event or occurrence as to which the right to indemnification is or may be asserted and (ii) allow ACH (including the employees, agents, and counsel) reasonable access to any of its

employees, property, and records for the purposes of conducting an investigation of such claim and for the purpose of obtaining statements, photographs, and taking such other steps as may be necessary to preserve evidence of the occurrence on which the claim is based. If the COUNTY denies ACH reasonable access as set forth, after written request therefore, the COUNTY will assume sole responsibility for the claim for which indemnification is sought and will not be entitled to indemnity.

    5.14.2  The COUNTY will hold harmless and indemnify ACH (together with its respective employees) against any loss or damage, including reasonable attorneys' fees and other costs of litigation, solely caused or necessitated by the negligent, reckless, intentional, or deliberately indifferent conduct of the COUNTY or its employees, which is related to medical treatment or care provided by ACH. With respect to any claim for indemnification, ACH will (i) give written notice thereof to the COUNTY within ninety(90) days of receiving notice of the event or occurrence as to which the right to indemnification is or may be asserted and (ii) allow the COUNTY (including the employees, agents, and counsel) reasonable access to any of its employees, property, and records for the purposes of conducting an investigation of such claim and for the purpose of obtaining statements, photographs, and taking such other steps as may be necessary to preserve evidence of the occurrence on which the claim is based. If ACH denies the COUNTY reasonable access as set forth, after written request therefore, ACH will assume sole responsibility for the claim for which indemnification is sought and will not be entitled to indemnity.

5.15  INDEPENDENT CONTRACTORS. In order to discharge its obligations hereunder, ACH may engage certain healthcare professionals as independent contractors rather than employees.

5.16  INSURANCE.

    5.16.1  ACH will maintain commercial automobile liability insurance with minimum limits of One Million Dollars ($1,000,000) per occurrence, covering owned, hired, and non-owned automobiles.

    5.16.2  ACH will maintain one or more commercial general liability insurance policies with minimum limits of bodily injury and/or property damage: One Million Dollars ($1,000,000) each occurrence and an annual policy aggregate of Two Million Dollars ($2,000,000).

    5.16.3  ACH will maintain professional liability insurance, including civil rights liability, with minimum limits of One Million Dollars ($1,000,000) each occurrence, Three Million Dollars ($3,000,000) annual aggregate.

    5.16.4  ACH will maintain workers' compensation and employer's liability insurance covering its employees while on the FACILITY's premises that complies with the statutory minimum requirements in the applicable state(s).

    5.16.5  ADDITIONAL INSUREDS. ACH will name the SHERIFF and the COUNTY as an additional insured for the sole negligence of ACH under the commercial automobile, commercial general and professional liability portions of insurance and provide the COUNTY with a Certificate of Insurance specific to correctional facilities evidencing the terms of the insurance coverage and policy limits.

5.17  NEW LEGISLATION. Should new legislation require substantial new medical treatment, the COUNTY will pay for it, unless specifically agreed upon between ACH and the COUNTY.

5.18  NO GRANT OF RIGHTS. Each of the parties understands and agrees that no grant or license of a party's rights in any patent, trademark, trade secret, copyright and/or other intellectual property right is made hereby, expressly or by implication.

5.19  NO RELATIONSHIP OR AUTHORITY. The parties agree that ACH will at all times be an independent contractor in the performance of the services hereunder, and that nothing in this AGREEMENT will be construed as or have the effect of constituting any relationship of employer/employee, partnership, or joint venture between the COUNTY and ACH. ACH does not have the power or authority to bind the COUNTY or to assume or create any obligation or responsibility on the COUNTY's behalf or in the COUNTY's name, except as otherwise explicitly detailed in this AGREEMENT, and ACH will not represent to any person or entity that ACH has such

power or authority. ACH will not act as an agent nor will ACH be deemed to be an employee of the COUNTY for the purposes of any employee benefit program.

5.20 NOTICE. Any notice required or permitted to be given hereunder will be in writing and delivered by overnight courier (e.g., FedEx), or by facsimile (receipt confirmed), to the respective addresses in this section or such other addresses as may be designated in writing by the applicable party from time to time, and will be deemed to have been given when sent. To the SHERIFF and/or the COUNTY: Calumet County Jail, 206 Court Street, Chilton, Wisconsin 53014; facsimile: 920.849.1431; email: wiegert.mark@co.calumet.wi.us. To ACH: Advanced Correctional Healthcare, Inc., Attn: Contract Attorney, 3922 West Baring Trace, Peoria, IL 61615; facsimile: 309.214.9977; email: jkolberg@advancedch.com.

5.21 OTHER CONTRACTS AND THIRD PARTY BENEFICIARIES. The parties acknowledge that ACH is not bound by or aware of any other existing contracts to which either the SHERIFF or the COUNTY are a party and which relate to the provision of healthcare to inmates at the FACILITY. The parties agree that they have not entered into this AGREEMENT for the benefit of any third person(s) and it is their express intention that this AGREEMENT is intended to be for their respective benefits only and not for the benefits of others who might otherwise be deemed to constitute third party beneficiaries thereof.

5.22 SEVERABILITY. If any provision of this AGREEMENT, or any portion thereof, is found to be invalid, unlawful, or unenforceable to any extent, such provision will be enforced to the maximum extent permissible so as to effect the intent of the parties, and the remainder of this AGREEMENT will continue unaffected in full force and effect. The parties will negotiate in good faith an enforceable substitute provision for such invalid provision that most nearly achieves the same intent and economic effect.

5.23 SUBCONTRACTING. In order to discharge its obligations hereunder, ACH may subcontract services including, but not limited to, pharmaceutical services, biomedical waste disposal, and mobile services.

5.24 USE BY OTHER PUBLIC AGENCIES (PIGGYBACK). ACH agrees to allow the COUNTY to authorize other public agencies in the COUNTY to purchase the proposed items by issuance of a purchase order at the same terms and conditions as this AGREEMENT, and to make payments directly to ACH during the period of time that this AGREEMENT is in effect.

5.25 USE OF NAME. It is understood and agreed by ACH that ACH's name may appear in certain COUNTY disclosure documents, including those required by law and in other regulatory and administrative filings in the ordinary course of the COUNTY's operations.

5.26 WAIVER. Any waiver of the provisions of this AGREEMENT or of a party's rights or remedies under this AGREEMENT must be in writing to be effective. Failure, neglect, or delay by a party to enforce the provisions hereof or its rights or remedies at any time, will not be construed as a waiver of such party's rights or remedies hereunder and will not in any way affect the validity of this AGREEMENT or prejudice such party's right to take subsequent action.

**IN WITNESS WHEREOF**, the parties hereto have hereunto set their hands and seals the date and year written below.

ADVANCED CORRECTIONAL HEALTHCARE, INC.

_____    4/7/2016
Sherri Miller                      Date
President & Chief Operations Officer

COUNTY OF CALUMET, WISCONSIN

_____    3-8-16
Todd Romenesko, County Administrator    Date

Please complete and return via fax to 309.214.9977 or email to jkolberg@advancedch.com.

If this contract is not returned to ACH by March 7, 2016, the price may be subject to increase.