UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ESTATE OF DEMETRIUS L. STEPHENSON,
by Special Administrator Richard Coad,

        Plaintiff,

        v.                          Case No. 22-C-956

CALUMET COUNTY,
KRISTEN KLOTZ, and
KRISTI LECLAIR,

        Defendants.

---

DECISION AND ORDER DENYING DEFENDANTS'
MOTIONS FOR JUDGMENT AS A MATTER OF LAW

---

The Estate of Demetrius L. Stephenson brought this action under 42 U.S.C. § 1983 against Calumet County, jail officers and medical staff at the County Jail, and members of the County's Health and Human Services (HHS) Department for damages arising out of Demetrius Stephenson's suicide while detained at the Calumet County Jail. Following the court's decision on the defendants' motions for summary judgment, only claims against the HHS employees Kristen Klotz, Shannon Teska, and Kristi LeClair (collectively, the HHS Defendants) and a *Monell* claim against the County remained.

The court held a jury trial that began on August 18, 2025. After the six-day jury trial, the jury was unable to reach a unanimous verdict, and the court declared a mistrial. On October 8, 2025, Plaintiff dismissed its claims against Teska with prejudice. This matter comes before the court on Klotz and LeClair's renewed motion for judgment as a matter of law and Calumet

County's renewed motion for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure. For the following reasons, both motions will be denied.

## LEGAL STANDARD

Rule 50(a)(2) of the Federal Rules of Civil Procedure provides: "Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment." If a Rule 50(a) motion made at the close of all the evidence is not granted, the movant may renew the motion. *See* Fed. R. Civ. P. 50(b). If no verdict was returned, the court may order a new trial or direct entry of judgment as a matter of law. Fed. R. Civ. P. 50(b)(2), (3).

Rule 50 of the Federal Rules of Civil Procedure "allows a district court to enter judgment against a party who has been fully heard on an issue during a jury trial if 'a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Passananti v. Cook County*, 689 F.3d 655, 659 (7th Cir. 2012) (citation omitted). The court must view the evidence presented at trial in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *See Martin v. Milwaukee County*, 904 F.3d 544, 550 (7th Cir. 2018). The court may not weigh the evidence or make credibility determinations. *Martinez v. City of Chicago*, 900 F.3d 838, 844 (7th Cir. 2018).

## ANALYSIS

### A. The HHS Defendants' motion for judgment as a matter of law

The HHS Defendants assert that, based on the evidence presented at trial, they are entitled to judgment as a matter of law on Plaintiff's Fourteenth Amendment claim. They contend that Plaintiff failed to present sufficient evidence that would allow a reasonable jury to conclude that Klotz and LeClair acted objectively unreasonably toward Stephenson. Alternatively, Klotz and

2

LeClair argue they are entitled to qualified immunity. Finally, Klotz and LeClair assert that they are entitled to judgment as a matter of law as to Plaintiff's claim for punitive damages. The court will address each argument in turn.

### 1. Fourteenth Amendment

Klotz and LeClair argue that no reasonable jury could find that they violated Stephenson's Fourteenth Amendment rights. The Fourteenth Amendment requires custodians of pretrial detainees, such as a jail, to provide essential medical care, including mental health care, for a pretrial detainee's serious mental health needs. To establish a Fourteenth Amendment violation in this case, Plaintiff must prove each of the following three things by a preponderance of the evidence for each defendant: (1) the defendant failed to take additional steps to protect Stephenson from harm, including self-harm, during his confinement at the Calumet County Jail; (2) the failure to take such additional steps was knowing and purposeful; and (3) the defendant's failure to take such steps to safeguard Stephenson was objectively unreasonable. *See Pittman v. Madison County*, 108 F.4th 561, 569 (7th Cir. 2024) (*Pittman IV*).

A defendant's failure to take additional steps is "knowing and purposeful" if the defendant understood she had the authority to take such additional steps but deliberately chose not to. *Id.* In other words, her failure to take the additional steps Plaintiff contends should have been taken was not due to mistake or negligence. *See Daniels v. Williams*, 474 U.S. 327, 328 (1986) ("We conclude that the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property."). A defendant's failure to knowingly and purposefully take such steps is objectively unreasonable if a reasonable person with the same professional duties, in the position of the individual defendant, would have taken the

3

additional measures Plaintiff contends should have been taken to assess Stephenson's serious mental health need. *See Pittman IV*, 108 F.4th at 570.

Plaintiff argues that a jury could find that Stephenson had suicidal ideation, intent, or plan and that Klotz and LeClair were aware that he was in need of mental health treatment he did not receive. It contends that if a defendant knows of a risk of suicide, even if the risk does not appear imminent, she must act. Although there was no evidence that issues of competency or mental responsibility had been raised by Stephenson's attorney in his criminal case, *see* Wis. Stat. §§ 971.13, 971.14, 971.15, and 971.16, Plaintiff maintains that Klotz and LeClair should have placed Stephenson on suicide watch, initiated Chapter 51 proceedings, or taken away his bedsheets and that, by the last week of his life, Stephenson should have been assessed, diagnosed, given a treatment plan, given therapy, and prescribed medicine.

When Plaintiff first arrived at the jail in May 2019, he reported thoughts of self-harm, hopelessness, past trauma involving his family, a history of serious mental health, and hallucinations. Trial Ex. 18 at 1–7. Stephenson had also been placed on suicide watch because he made statements about killing himself; he had heard voices telling him to hurt himself; he saw a demon; and he reported a history of bipolar, anxiety, and schizophrenia, for which he had taken medication in the past. *Id.* Even though Stephenson did not claim to be suicidal during June and July 2019, Plaintiff asserts that, during the week leading up to his suicide, Klotz and LeClair were aware that Stephenson was again making suicidal statements.

During the week of August 11, 2019, Stephenson learned that his sister had been sexually assaulted, and Sergeant Maggie Ratajczak found him crying in the dayroom. Trial Ex. 18 at 10–12; Trial Tr. 887. Lt. Julie Hoerning sent Klotz an email saying Stephenson was "borderline suicidal." Trial Tr. 159; Trial Ex. 18 at 10. Lt. Hoerning also told Klotz that Stephenson had made

statements about hanging himself and that he had said his depression was going to be the end of him. Trial Ex. 18 at 11. HHS therapists saw Stephenson on August 13, August 15, and August 20. *Id.* at 11–16. Stephenson told the HHS therapists during each visit that he was having suicidal thoughts. Trial Tr. 637. Klotz saw Stephenson on August 15 and 20 and reviewed prior progress notes. Trial Ex. 18 at 15–16; Trial Tr. 578–79. LeClair, the HHS supervisor, also knew that Stephenson was making suicidal statements because she reviewed the crisis notes. Trial Tr. 399, 618, 994.

To summarize, in the week before his death, Stephenson requested to see HHS, said he was extremely depressed, made statements about hanging himself in his cell, said his depression would be the end of him, said he wished he were dead, was apathetic, said his parents do not care about him, flushed his breakfast down the toilet, had not been drinking water, felt guilt about his sister's assault, and planned to kill himself after his next court date in September if he was not released. Trial Ex. 18 at 12–16. Stephenson ultimately committed suicide on August 20, 2019. Trial Tr. 324. Plaintiff argues that Klotz and LeClair's failure to take any of the additional steps was knowing and purposeful and that any reasonable mental health practitioner would have assessed Stephenson, developed a treatment plan, referred him to a psychiatrist, and, in the last week of his life, placed him on suicide watch. Dkt. No. 342 at 13 (citing Dr. Holoyda's trial testimony, Trial Tr. 722, 732, 742).

The HHS Defendants assert that, even though Klotz and LeClair did not take these steps, the failure to do so was not knowing, purposeful, or objectively unreasonable. They contend that Stephenson did not tell Klotz anything during their sessions on August 15 or August 20 that would lead a reasonable jury to believe that it was obvious that Stephenson needed to be placed on suicide watch, involuntarily committed, or referred for an evaluation for psychotropic medications. They

maintain that Klotz and LeClair mistakenly believed that he was housed with other inmates. The HHS Defendants argue that no reasonable jury could find that Klotz or LeClair acted objectively unreasonably by failing to take additional steps simply because Stephenson made a statement that he would kill himself if he was not released after his court date in September.

Based on the record, including the expert opinion of Dr. Holoyda, however, the court cannot say that no reasonable jury could find that Klotz and LeClair's failure to take further action under the circumstances was objectively unreasonable. As the court suggested in its decision addressing the parties' motions for summary judgment, application of the objective reasonableness standard to the decisions of psychiatric social workers addressing mental health needs of jail inmates appears to constitutionalize malpractice claims, notwithstanding the Court's repeated insistence that "'liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.'" *Estate of Stephenson v. Calumet County*, 787 F. Supp. 3d 876, 888–89 (E.D. Wis. 2024) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 395 (2015); *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)). The effect may be to transform county jails into mental health treatment centers, as opposed to places for temporary detention of individuals awaiting trial. Nevertheless, for the reasons stated in the court's summary judgment decision, this appears to be the current state of the law, and it is not the court's duty to weigh the evidence or make credibility determinations. *Martinez*, 900 F.3d at 844.

The HHS Defendants argue that, even if the court determines that a reasonable jury could find that Klotz or LeClair acted objectively unreasonably, Plaintiff failed to set forth facts to allow a reasonable jury to find that their actions caused Stephenson's death or other harm. They assert that suicide is unpredictable and that even inmates who are diagnosed, followed closely, and treated with medication still commit suicide. But as the HHS Defendants concede, causation is

6

generally a question for the jury. *See Taylor v. City of Milford*, 10 F.4th 800, 812 (7th Cir. 2021) (citations omitted). For these reasons, the court denies the HHS Defendants' renewed motion for judgment as a matter of law on this basis.

### 2. Qualified Immunity

The HHS Defendants argue, in the alternative, that Plaintiff's Fourteenth Amendment claims against Klotz and LeClair must be dismissed because they are shielded from personal liability under the doctrine of qualified immunity. Under the doctrine of qualified immunity, government officials performing discretionary functions are immune from civil liability for constitutional violations "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (*per curiam*) (internal quotation marks and citation omitted). The doctrine reflects an accommodation between the public interest in safeguarding constitutional guarantees on the one hand, and on the other, the concern that subjecting government officials to personal liability and harassing litigation would inhibit them in the performance of their duties. *Id.*

Although qualified immunity is an affirmative defense to a § 1983 action, once raised, the plaintiff has the burden to overcome it. *Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir. 2019). The plaintiff must show both "(1) that the facts make out a constitutional violation, and (2) that the constitutional right was 'clearly established' at the time of the official's alleged misconduct." *Abbott*, 705 F.3d at 713 (citations omitted). While a plaintiff is not required to present a case directly on point, "existing precedent must have placed the statutory or constitutional question

7

beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality" and has reversed federal courts in qualified immunity cases where the lower courts "wrongly subject individual officers to liability." *City & County of San Francisco v. Sheehan*, 575 U.S. 600, 611 & n.3 (2015) (internal quotation marks and citation omitted). The Court has explained:

> An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it, meaning that existing precedent placed the statutory or constitutional question beyond debate. This exacting standard gives government officials breathing room to make reasonable but mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.

*Id.* (internal quotation marks and citation omitted).

In other words, the court must determine whether a constitutional rule applies with such obvious clarity that it placed Klotz and LeClair on notice that their conduct was unlawful. The right to mental health care and protection from self-harm has long been established. *Miranda v. County of Lake*, 900 F.3d 335, 349–50 (7th Cir. 2018) (collecting cases). And as the Seventh Circuit made clear approximately one year before the facts giving rise to this case occurred, the standard by which the knowing and purposeful actions of public officials responsible for the protection and care of detainees would be assessed is objective reasonableness. *Id.* at 351–52.

To be sure, *Miranda* did not involve a pretrial detainee committing suicide, and the Seventh Circuit did not extend the objective unreasonableness standard to inmate self-harm cases until its decision in *Pittman IV* in 2024. 108 F.4th at 569. But the Supreme Court has never held that official action is protected by qualified immunity unless the very action in question has previously been held unlawful; it is enough that the unlawfulness of the official's act or failure to act is apparent "in the light of pre-existing law." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting

*Anderson*, 483 U.S. at 640). "Although earlier cases involving 'fundamentally similar' facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding." *Id.* at 741.

In addition, in *Belbachir v. County of McHenry*, 726 F.3d 975 (7th Cir. 2013), the Seventh Circuit held that the decision of a clinical social worker to do nothing after noting that a jail inmate was "suicidal and suffering from a 'major depressive disorder'" was enough to show a constitutional violation even under the deliberate indifference standard. *Id.* at 980–81. The court rejected the defendant social worker's argument that because suicide was not imminent, she was not required to act, reasoning:

> The implication is that if Belbachir had said, "I intend to commit suicide as soon as I formulate a specific plan for how to do so, but not before," [the social worker] would have replied, "okay, but tell us when you have devised your plan so that we can prevent your carrying it out," but that otherwise [the social worker] was entitled to do nothing.

*Id.* The court characterized the argument as "what in another context would be comical." *Id.* Given this strong language, the court is unable to conclude that qualified immunity applies. If, as *Belbachir* held, the failure to act when suicide is not imminent is enough to show deliberate indifference, it follows that the constitutional right was defined clearly enough to put Klotz and LeClair on notice of their duties under the circumstances they confront. *See Prude v. Meli*, 76 F.4th 648, 659 (7th Cir. 2023).

As noted above, the HHS Defendants assert that Klotz and LeClair did not ignore Stephenson's needs but concluded in their professional judgment that he was not showing signs that he was at risk of serious harm. The court has already concluded that these are questions that must be resolved by a jury. If Plaintiff fails to convince the jury that Klotz and LeClair did not fail to take reasonable available measures to abate the risk of serious harm to Stephenson,

9

Plaintiff's Fourteenth Amendment claim against Klotz and LeClair will fail. But, for the reasons stated above, if Plaintiff does prevail on its Fourteenth Amendment claim against Klotz or LeClair, qualified immunity does not apply.

### 3. Punitive Damages

Finally, the HHS Defendants argue that Plaintiff failed to carry its burden to establish punitive damages. "[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). This appears a closer question. There is no evidence that either Klotz or LeClair were motivated by evil motive or intent. To the contrary, they appeared sincere in their efforts to provide Stephenson with the help he needed. Nor does it appear that their actions reflected reckless or callous indifference to his needs. Yet, if the conduct of the defendant social worker in *Belbachir* was enough to meet the standard of deliberate indifference, the court is reluctant to take the issue from the jury that nevertheless will need to decide the case. At least at this point, the court is satisfied that the issue is close enough to submit the question to the jury. If Plaintiff's version of events is accepted by the jury, it may support an award of punitive damages. Accordingly, the HHS Defendants' motion for judgment as a matter of law is denied.

## B. Calumet County's motion for judgment as a matter of law

Calumet County asserts that, based on the evidence presented at trial, it is entitled to judgment as a matter of law on Plaintiff's *Monell* claim. Plaintiff asserts that the County is liable for Stephenson's death under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for its policy gap and for failing to adequately train and supervise. *Monell* held that while local governments are not strictly liable for the constitutional violations of their employees under the

doctrine of *respondeat superior*, they can be held liable for damages under § 1983 for violations of federal rights that occur "pursuant to official municipal policy of some nature." 436 U.S. at 691. Municipal liability under § 1983 is not easily established, however. It requires an act or a failure to act that is "attributable to the municipality [that] itself is the 'moving force' behind the plaintiff's deprivation of federal rights." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 400 (1997) (quoting *Monell*, 436 U.S. at 694). In this respect, the bar is high and to establish municipal liability under § 1983, a plaintiff must generally show that an "express policy (e.g., policy statement, regulation, or officially adopted decision), an informal but established municipal custom, or even the action of a policymaker authorized to act for the municipality" was the direct cause of the alleged constitutional deprivation. *J.K.J. v. Polk County*, 960 F.3d 367, 377 (7th Cir. 2020) (cleaned up).

As an initial matter, Plaintiff asserts that HHS Supervisor LeClair, a policymaker for the County, directly violated Stephenson's Fourteenth Amendment rights. "It is well-established that when a particular course of action is directed by those who set municipal policy, the municipality is responsible under section 1983, even if the action in question is undertaken only once." *Valentino v. Vill. of South Chicago Heights*, 575 F.3d 664, 675 (7th Cir. 2009) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986)). "In other words, an act is an official local-government policy when the decision to adopt a particular course of action 'is properly made by that government's authorized decisionmakers.'" *Burger v. County of Macon*, 942 F.3d 372, 374 (7th Cir. 2019) (quoting *Pembaur*, 475 U.S. at 481).

Plaintiff contends that LeClair was the final policymaker regarding mental health decisions in the jail and that she participated in and agreed with Klotz' decision not to assess, diagnose, or give Stephenson a treatment plan; place him on suicide watch; or commit him under Chapter 51.

11

The County argues that LeClair did not violate Stephenson's rights for the reasons set forth in the HHS Defendants' motion for judgment as a matter of law. But as the court explained above, based on the record, the court cannot say that no reasonable jury could find that LeClair directly violated Stephenson's Fourteenth Amendment rights. Because Plaintiff's *Monell* claim survives on this theory of liability, the court will not address the County's arguments as to Plaintiff's alternate theories of liability. Therefore, the County's motion for judgment as a matter of law is denied.

## CONCLUSION

For these reasons, the HHS Defendants' motion for judgment as a matter of law (Dkt. No. 337) and Calumet County's motion for judgment as a matter of law (Dkt. No. 338) are **DENIED**. The Clerk is directed to set the matter on the court's calendar for a telephone conference to address further scheduling.

**SO ORDERED** at Green Bay, Wisconsin this 16th day of December, 2025.

William C. Griesbach
United States District Judge

12